UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GIBSON BRANDS, INC.,

       Plaintiff,

v.

       Case No. 1:22-cv-766

225 PARSONS, LLC, PLAZACORP
REALTY ADVISORS, INC., and
DOES 1-10.

       Hon. Hala Y. Jarbou

       Defendants.
_____/

## OPINION

      Plaintiff Gibson Brands, Inc. ("Gibson") brings this action against Defendants 225 Parsons, LLC ("Parsons"), Plazacorp Realty Advisors, Inc. ("Plazacorp"), and "Does 1-10." Gibson seeks declaratory and injunctive relief for alleged trademark violations related to Defendants' plans to redevelop the property where Gibson once operated. Before the Court is Defendants Parsons and Plazacorp's motion to dismiss for lack of subject matter jurisdiction (ECF No. 26). For the reasons stated below, the Court will deny the motion.

## I. FACTUAL BACKGROUND

      Gibson, a guitar manufacturer, was originally based in Kalamazoo, Michigan, where it manufactured its guitars at 225 Parsons Street. (Am. Compl. ¶¶ 4, 15, ECF No. 10.) In the 1980s, the company moved its operations to Nashville, Tennessee. (*Id.* ¶ 4-5.) But not everyone went along. In 1985, those employees who stayed behind formed a new company, Heritage Guitars, Inc. ("Heritage"). (*Id.* ¶ 5.) In the early 1990s, Gibson sued Heritage for trademark infringement, and the parties eventually settled this dispute in 1991 through a settlement agreement ("the Settlement Agreement"). (*Id.*) In 2020, after Gibson accused Heritage of violating the Settlement

Agreement, Heritage filed a lawsuit in this Court seeking a declaratory judgment that it was not in violation.  (*Id.*)  Just this year, Gibson and Heritage settled that case.  (*See* Settlement, *Heritage Guitar, Inc. v. Gibson Brands, Inc.*, No. 1:20-cv-229, ECF No. 289.)  Gibson's current allegations of trademark infringement against Defendants arose out of information discovered in the lawsuit between Gibson and Heritage.  (Am. Compl. ¶ 7.)

Parsons bought the real estate at 225 Parsons Street in 2014 or 2015.  (Nicholson Dep. 9-10, ECF No. 31-5.)[1]  Parsons is co-owned by Jeff Nicholson and Archie Leach.  (*Id.* at 9; Leach Dep. 16, ECF No. 31-2.)[2]  Parsons retained PlazaCorp to manage the property and assist with plans to redevelop the property.  (Am. Compl. ¶ 2; Nicholson Dep. 11.)  Nicholson and Leach also own PlazaCorp.  (Am. Compl. ¶ 3.)  Finally, in 2016, Nicholson and Leach acquired Heritage itself.  (Leach Dep. 15-16.)  They later sold half of the company to another entity, but still retain their fifty-percent interest to this day.  (*Id.* at 21-22.)

Gibson's allegations of infringement relate to a "guitar entertainment destination" that Defendants intend to build at 225 Parsons Street.  (*Id.* ¶ 6-7.)  Defendants' proposals for the development include rebuilding an old smokestack with Gibson's name on it and constructing a courtyard in the shape of Gibson's ES-335 guitar.  (*Id.* ¶ 7; *see also* Design Plans, ECF No. 31-3, PageID.1114, 1136; Marketing Materials, ECF No. 31-4, PageID.1170, 1179; Leach Dep. 36-37; Nicholson Dep. 26.)  Gibson owns trademarks related to the company's name and the ES-335 guitar.  (*See* Am. Compl. ¶¶ 1, 7; Guitar Trademark 1, ECF No. 10-26, PageID.695; Guitar Trademark 2, ECF No. 10-27, PageID.697.)  Nicholson testified that there were no plans to rebuild

---

[1] Excerpts of Jeff Nicholson's deposition can also be found at ECF No. 27-5.

[2] Excerpts of Archie Leach's deposition can also be found at ECF No. 27-6.

the smokestack that doesn't include "Gibson" on it because "[i]t's [his] smokestack.  [He] can do what [he] want[s] with it."  (Nicholson Dep. 26.)

According to Nicholson, the entertainment destination is "at the beginning" stage of development.  (*Id.* at 20.)  He could not "ballpark" when construction would begin.  (*Id.*)  As of 2022, the entertainment destination was undergoing entitlements—including permitting, historic tax credits, and community redevelopment loans—design work, pricing, and select demolition work.  (*Id.* at 19.)  Defendants do not have "final construction permits" and their designs are "a very, very long way from construction drawings."  (*Id.* at 19, 58.)  The plans are in flux, having "evolved over a few years."  (*Id.* at 22.)

However, both Nicholson and Leach have stated that they do plan for the smokestack to have Gibson's name on it.  (*See id.* ("I'm going to rebuild my smokestack the way it was when I bought it."); Leach Dep. 37 (stating that when the smoke stack is rebuilt, "[i]t'll be duplicated as it was torn down").)

Moreover, Defendants have distributed marketing materials depicting design plans for the smokestack and guitar-shaped courtyard.  (*See* Am. Compl. ¶ 67; Marketing Materials, PageID.1170, 1179.)  Nicholson explained that these materials were "probably used in – for us to have meetings with the municipality around the redevelopment of the property."  (Nicholson Dep. 42.)  The meetings that Nicholson is referring to include meetings with the City of Kalamazoo, Western Michigan University, Kalamazoo Valley Community College, Kalamazoo County, and the Downtown Development Authority.  (*Id.* at 42-43.)

When applying for a zoning variance for the entertainment destination, Defendants also told the City of Kalamazoo about their plans to "rebuild the historic smokestack that was

removed." (Kalamazoo Zoning Application, ECF No. 31-6, PageID.1216.) And Defendants have "started a GoFundMe page to save the smokestack." (Leach Dep. 35.)

Finally, Defendants have been attempting to secure a historical tax credit on the entertainment destination, in part, due to the smokestack. (Nicholson Dep. 50.) Nicholson explained that the smokestack has "become part of the development, and its become part of historic tax credit application and everything else." (*Id.* at 47.)

## II. LEGAL STANDARD

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction. A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Facial attacks are reviewed under the same standard that applies to a Rule 12(b)(6) motion: the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint. *Id.*; *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022).

In a "factual attack," however, no presumption of truth applies. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. Factual attacks challenge the actual existence of matters affecting jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "A factual attack [] is advanced when the movant contests the alleged jurisdictional facts by introducing evidence outside the pleadings." *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021) (internal citations omitted). To resolve a factual attack, "'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *RMI Titanium Co.*, 78 F.3d at 1134 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)).

4

Here, Defendants purport to make both a facial and factual attack.  (*See* Defs.' Br. in Supp. of Mot. to Dismiss, ECF No. 27, PageID.976.)  In support of its motion, Defendants have attached subpoenas for 225 Parsons, PlazaCorp, Nicholson, and Leach to testify in the 2020 case between Gibson and Heritage.  They have also attached excerpts of Nicholson and Leach's depositions. Because Defendants rely on matters outside of the pleadings, the Court will analyze the motion as a factual attack on subject matter jurisdiction.  Regardless of the type of attack, the party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction."  *EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010).

### III. ANALYSIS

Defendants contend that the Court lacks subject matter jurisdiction because Gibson's claims are not ripe.  (*See* Defs.' Br. in Supp. of Mot. to Dismiss, PageID.968.)  They further argue that even if the Court has subject matter jurisdiction, the Court should decline to exercise it under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.  Gibson disagrees.  It argues that Defendants' challenge to subject matter jurisdiction is actually an attack on an element of Gibson's statutory claims under the Lanham Act, 15 U.S.C. § 1125, et seq.  (*See* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 31, PageID.1061-1063.)  The Court will first provide an overview of an Article III case or controversy and then address each of the parties' arguments.

"'For a dispute to qualify as an Article III case [or controversy] that a federal court may resolve, the plaintiff who brings the dispute must have standing.'"  *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 389 (6th Cir. 2022) (quoting *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021)).  For a plaintiff to have standing, three elements are required: "(1) that [the plaintiff] has suffered an 'injury in fact,' (2) that there is a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative,

that the injury will be redressed by favorable decision.'"  *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

An injury in fact requires a "legally protected interest [that] has been invaded and [an] injury [that] is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Lujan*, 504 U.S. at 560).  "Suits based solely on the 'mere risk of future harm' cannot establish an injury sufficient for standing."  *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021)).

Similarly, "a claim is not ripe if it turns on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Id.* (quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020)).  "'Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review.'"  *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)).  "Ripeness is related to standing, and shares a foundation in Article III's case-or-controversy requirement."  *Miller v. City of Wickliffe*, 852 F.3d 497, 503 (6th Cir. 2017) (citing *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992)).

Gibson seeks a declaratory judgment in this action.  "The Declaratory Judgment Act 'does not alter [the standing] rules or otherwise enable federal courts to deliver an expression of opinion about the validity of laws.'"  *Safety Specialty Ins. Co.*, 53 F.4th at 1020-21 (quoting *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)).  In other words, it "does not 'change the essential requisites for the exercise of judicial power.'"  *STAT Emergency*, 946 F.3d at 954 (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936)).  "All it does is create an alternative remedy—a declaratory judgment—for *existing* cases or controversies, a point

confirmed by the Supreme Court's long equation of the Act's 'actual controversy' requirement with Article III's case-or-controversy imperative." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)).  Accordingly, "'[t]o get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III.'"  *Larry E. Parrish P.C. v. Bennett*, 989 F.3d 452, 456 (6th Cir. 2021) (quoting *Hemlock Semiconductor Corp. v. Kyocra Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018)).

### A. Jurisdictional or Merits Challenge

Gibson contends that, in arguing that the case is not ripe, Defendants are actually disputing the "use in commerce" element of Gibson's trademark claims.  It argues that "[b]ecause Defendants' future infringement relates directly to the 'use in commerce' element of Gibson's trademark infringement claims, it is properly considered as an element of Gibson's cause of action and not  a bar to this Court's subject matter jurisdiction."  (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, PageID.1063.)  In support of this proposition, Gibson cites *United States v. Martin*, 526 F.3d 926 (6th Cir. 2008)—a felon-in-possession case.  *See Martin*, 526 F.3d at 933 ("[W]hile courts frequently call the interstate commerce nexus requirement a jurisdictional element, it is jurisdictional only in the sense that without that nexus there can be no federal crime; it does not affect a court's power to adjudicate a case." (internal quotation marks and citation omitted)).  Gibson further points to a Ninth Circuit case which applies a similar principle to the "use in commerce" element of a trademark infringement claim.  *See LaQuinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 873 (9th Cir. 2014) (finding that the "use in commerce" element is not a jurisdictional requirement).

However, *LaQuinta* does not stand for the proposition that any challenge to the ripeness of a trademark claim collapses into a merits analysis; indeed, there, the plaintiff did not raise any ripeness concerns at all.  Moreover, district courts have frequently considered the likelihood of

future infringement when determining whether a trademark dispute is ripe.  *See, e.g.*, *Covantage Credit Union v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, No. 21-12559, 2022 WL 821668, at *6 (E.D. Mich. Mar. 16, 2022), *appeal dismissed*, No. 22-1329, 2022 WL 13638736 (6th Cir. May 11, 2022) (finding that the plaintiff's trademark infringement claims were ripe because "[t]he allegations in the complaint and the evidence presented demonstrate[d] a live controversy that derive[d] from the defendant's present use of the [] marks" and the plaintiff's allegations that the defendant will use the marks in the future did not negate the current infringement "[n]or are allegations regarding planned use irrelevant to the question of the Court's jurisdiction"); *Capital Grille Holdings, Inc. v. Historic Hotels of Nashville, LLC*, 448 F. Supp. 3d 819, 824-29 (M.D. Tenn. 2020) (stating that "[m]erely because Plaintiff has yet to use its mark in the Nashville area in no way affects the allegation that it is currently suffering an injury-in-fact based on Defendant's infringing use of its marks"); *House of Bryant Publ'ns, LLC v. City of Lake City, Tenn.*, No. 3:14-CV-93-TAV-HBG, 2014 WL 2208974, at *7-8 (W.D. Tenn. 2014) (holding that a dispute was not ripe because, among other things, the defendant's allegedly infringing future acts were only speculative); *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1016 (N.D. Ill. 2007) (holding that a trademark dispute was not ripe because "the allegedly infringing activity in this case . . . was far from imminent when this action was filed, and may never happen at all").

Finally, if courts were required to treat all arguments about the likelihood of future events as arguments about the merits of a claim, it would prevent courts from engaging in a ripeness analysis altogether.  This would ignore the axiomatic principle that a federal court's power "extends only to 'Cases' and 'Controversies.'"  *OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 957 (6th Cir. 2021) (quoting U.S. Const. art. III § 2).  "[A] claim is not amenable to . . . the judicial process when it is filed too early (making it unripe) or filed too late (making it moot)."  *Id.*

(internal citations and quotation marks omitted).  Accordingly, Defendants' arguments in this Rule 12(b)(1) motion will be analyzed as jurisdictional arguments concerning ripeness, not merits arguments concerning the elements of trademark infringement.

### B. Ripeness

To determine if a dispute is ripe, the Court asks two questions.  First, "[d]oes the claim 'arise[] in a concrete factual context and concern[] a dispute that is likely to come to pass?'" *OverDrive*, 986 F.3d at 957-58 (quoting *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc)).  "A claim is not ripe if it turns on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Id.* at 958 (quoting *Trump*, 141 S. Ct. at 535).  Second, "[w]hat is 'the hardship to the parties of withholding court consideration'?"  *Id.* (quoting *Warshak*, 532 F.3d at 525).  "Even one negative answer [to these questions] creates a ripeness problem[.]"  *Id.*

Question One: Do Gibson's claims arise in a concrete factual context and concern a dispute that is likely to come to pass?

Defendants characterize the allegations in Gibson's complaint as the following: "[*I*]f Defendants redevelop 225 Parsons Street, and *if* this redevelopment is an entertainment venue, and *if* this venue is finished, and *if* this venue includes a reference to Gibson, then Defendants *might* infringe Gibson's trademarks."  (Defs.' Br. in Supp. of Mot. to Dismiss, PageID.978-979.)  Essentially, Defendants believe that this Court's jurisdiction is entirely dependent on the likelihood of the entertainment destination ever physically existing.  (*See id.*, PageID.968.)  That, according to Defendants, renders Gibson's complaint too speculative.

But Defendants' argument mischaracterizes Gibson's allegations.  Subject matter jurisdiction in this instance does not solely depend on Defendants' ultimately developing the

entertainment destination because Gibson has also alleged that Defendants' marketing and designs currently infringe on its trademarks.

> Defendants have improperly used the Gibson Trademarks in its advertising and plans for Defendants' guitar entertainment destination at 225 Parsons Street and has thus falsely stated or otherwise implied that Defendants' guitar entertainment destination is authorized, licensed, or sponsored by Gibson pursuant to Gibson's strict quality standards or that its use of the Gibson Trademarks is authorized or licensed by Gibson.

(Am. Compl. ¶ 67.)

The factual record further supports the idea that Defendants' past and present behavior, rather than solely their hypothetical future behavior, is at issue in this dispute. Defendants' marketing materials depict an entertainment destination with a guitar-shaped courtyard and Gibson's name on a smokestack. (*See* Marketing Materials, PageID.1170, 1179.) Nicholson admitted that Defendants likely gave these marketing materials to various municipal bodies and universities in the area. (*See* Nicholson Dep. 42-43.) Defendants also presented their plans to rebuild the smokestack with Gibson's name on it when applying for a historic tax credit, soliciting online donations, and obtaining a zoning variance from the City of Kalamazoo. (*See* Nicholson Dep. 47, 50; Leach Dep. 35; Kalamazoo Zoning Application, PageID.1216.)

Where a plaintiff alleges both past and future infringement and does not base its claim solely on the Declaratory Judgment Act, district courts in this circuit have found that the plaintiff's claims were ripe for review. *See, e.g.*, *Covantage Credit Union*, 2022 WL 821668, at *7 (finding that the plaintiff's claim was ripe, in part, because "[t]he defendant's contention that the plaintiff can no more than hypothesize about how the defendant will use [the] marks is belied by the defendant's acknowledgement that it actively is using [the]marks and has done so for more than two years"); *Capital Grille Holdings, Inc.*, 448 F. Supp. 3d at 827-28 (noting that "because Plaintiff alleged that Defendant is currently infringing its marks, and has been since 1995, there is

no legitimate question that Plaintiff's alleged injury-in-fact is an immediate injury and thus sufficient to support standing[,]" irrespective of the fact that "Plaintiff has yet to use its mark in the Nashville area").

But, as Defendants point out, Gibson seeks declaratory and injunctive relief.  It is true that "[i]n the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing.  The plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.'" *Feiger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)).  In other words, a plaintiff seeking a declaratory judgment "must plausibly allege facts that, 'under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy to warrant the issuance of a declaratory judgment.'" *STAT Emergency Med. Servs., Inc.*, 946 F.3d at 954 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).  In this vein, however, courts have exercised, or declined to exercise, jurisdiction over trademark infringement claims seeking a declaratory judgment based on a defendant's plans to enter a market.

In *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1015 (N.D. Ill. 2007), the plaintiff, who owned a restaurant in Chicago called "Japonais," sought a declaration that the defendant's potential opening of a restaurant using the "Japonais" name and design would infringe on the plaintiff's trademark rights.  *Id.* at 1006.  The Northern District of Illinois found that the defendant's opening of his own "Japonais" restaurant was not in imminent danger of occurring at the time the plaintiff filed the action.  *Id.* at 1015.  The court noted that the defendant's actual preparations for opening the restaurant did not advance significantly beyond the intent-to-use application; at best, the defendant had driven around searching for a location and played around

11

with a menu.  *Id.*  It ultimately concluded that "no 'actual controversy' exist[ed] in [the] case to support the exercise of jurisdiction under the Declaratory Judgment Act."  *Id.* at 1018.

In *Young v. Vannerson*, 612 F. Supp. 2d 829 (S.D. Tex. 2009), one of the plaintiffs, Vincent Paul Young, Jr.—a professional football player—claimed that because he is widely known by his initials "VY" and the nickname "INVINCEABLE," he had common-law ownership over the marks *Id.* at 834.  He along with his company Vince Young, Inc. sued three individuals and their joint venture seeking a judgment declaring their exclusive right to use the "VY" and "INVINCEABLE" marks.  *Id.* at 833.  One of the defendants had filed an intent-to-use application to use the marks for a variety of commercial products.  *Id.*  The Southern District of Texas found that the case was ripe because "the defendants ha[d] expended considerable sums to develop and to market the VY and INVINCEABLE marks," including designing and producing sample decals, t-shirts, and other products as well as contacting manufacturers and testing the market with these samples.  *Id.* at 845.

Similarly, in *House of Bryant Publications, LLC v. City of Lake City*, No. 3:14-CV-TAV-HBG, 2014 WL 5449672 (E.D. Tenn. Oct. 22, 2014), the Eastern District of Tennessee found that "the developer defendants ha[d] taken significant steps towards infringement of [the] plaintiff's 'ROCKY TOP' marks" by formulating a business plan, securing a licensing partner, and producing sample shirts.  *Id.* at *6.

The facts of this case are more similar to *Vannerson* and *House of Bryant* than *Geisha*.  Unlike *Geisha*, Defendants have chosen a location and drawn up development plans.  And, similar to *Vannerson and House of Bryant*, Defendants have taken significant steps in terms of design and marketing.  Defendants included the smokestack and guitar-shaped courtyard in the marketing materials provided to municipal bodies and universities in the Kalamazoo area.  They also presented their plans to rebuild the smokestack with Gibson's name on it when applying for a

12

historic tax credit, soliciting online donations, and obtaining a zoning variance from the City of Kalamazoo.  The alleged infringement is not conjectural or hypothetical; rather, as Gibson argues, it is already occurring through the use of its marks in the promotion of the ultimate entertainment destination.  Therefore, these allegations involve the sort of ongoing and potential future harm ripe for judicial review.  *See AARP v. 200 Kelsey Assocs., LLC*, No. 06 CIV. 81 (SCR), 2009 WL 47499, at *9 (S.D.N.Y. Jan. 8, 2009) ("Where . . . a party has produced prototypes or samples of the allegedly infringing products, begun soliciting—and advertising to—potential customers, or otherwise invested significant sums of money in preparation for producing the goods, the case or controversy requirement is likely to be satisfied." (collecting cases)).

Defendants further contend that their actions related to marketing and promotion do not create jurisdiction over this action because Gibson's prayer for relief focuses exclusively on the use of Gibson's trademarks in the eventual entertainment destination itself.  (*See* Defs.' Reply Br. in Supp. of Mot. to Dismiss, ECF No. 35, PageID.1256-1257.)  In its prayer for relief, Gibson asks the Court for "[a] judicial declaration that Defendants' use of the Gibson Trademarks on Defendants' guitar entertainment destination at 225 Parsons Street" constitutes trademark infringement, false designation of origin, trademark dilution, and unfair competition.  (Am. Compl., PageID.594.)

However, this Court's jurisdiction is not dependent on the particular way a plaintiff phrases its prayer for relief.  Putting aside whether one might interpret "use of the Gibson Trademarks on Defendants' guitar entertainment destination" to include use of the trademarks in the marketing materials for that destination, Gibson's prayer also includes a request for "such other monetary, equitable, and further relief, as this Court may deem appropriate."  (Am. Compl., PageID.596.) When complaints contain such "general prayers for relief . . . it appears to be widely accepted that

district courts retain discretion to extend relief beyond the bounds of the specific prayers for relief requested in a complaint." *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 744 (W.D. Tenn. 2012) (collecting cases).  In such a situation, "courts are not confined to the relief requested in the Prayer for Relief, and they can look to other portions of the complaint to determine whether plaintiffs request additional relief not specifically delineated in the Prayer for Relief." *Id.*; *see also Pension Ben. Guar. Corp. v. East Dayton Tool & Die Co.*, 14 F.3d 1122, 1127 (6th Cir. 1994) ("[O]missions in a prayer for relief do not bar redress of meritorious claims.").  Gibson's amended complaint states that "Defendants have improperly used the Gibson Trademarks in its advertising and plans for Defendants' guitar entertainment destination at 225 Parsons Street[.]"  (Am. Compl. ¶ 67.)  It also states that "Defendants plan to use or has used the Gibson Trademarks to entice others to invest in its guitar entertainment destination at 225 Parsons Street."  (*Id.* ¶ 64.)  Because Gibson's amended complaint refers to infringement through the marketing materials, the Court may grant declaratory relief concerning this issue despite the specific phrasing of Gibson's prayer for relief.

Finally, the offensive nature of Gibson's case makes it somewhat unique, but not invalid. While "[d]eclaratory judgment actions asserting intellectual property rights are usually brought by potential infringers seeking a declaration of noninfringement or invalidity," that does not have to be the case, as "[s]uch actions may also be brought by intellectual property owners seeking declarations of impending infringement." *Vannerson*, 612 F. Supp. 2d at 838; *see also Geisha*, 525 F. Supp. 2d at 1010 ("[T]his case reverses the roles of the parties in a typical, 'defensive' declaratory judgment action because the putative owner of the intellectual property [] is acting 'offensively' by suing a potential future infringer.").  The offensive nature of a declaratory judgment action may weigh against a case's ripeness under some circumstances, but this is not one of those cases.  Because this case is ripe, the fact that a declaratory judgment is being sought

offensively rather than defensively is of no significance. *See Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 763 (Fed. Cir. 1990) ("If the controversy requirement is met by a sufficient allegation of immediacy and reality, we see no reason why a patentee should be unable to seek a declaration of infringement against a future infringer.").

Question Two: What is the hardship to the parties of withholding consideration?

Defendants argue that "Gibson will suffer no hardship from having to follow the rule by which all trademark-infringement plaintiffs must abide: do not file suit until someone actually harms your trademark rights." (Defs.' Br. in Supp. of Mot. to Dismiss, PageID.982.) They cite *Overdrive* for the proposition that Gibson cannot suffer an undue hardship "if no current infringement exists and if it merely must wait until any new act of (alleged) infringement occurs[.]" *Overdrive*, 986 F.3d at 958. But, as previously explained, Gibson claims that Defendants are currently harming its rights by promulgating marketing materials with its trademarks and will allegedly continue to do so. Therefore, unlike *Overdrive*, which declined to resolve a question of only future infringement, the Court here will be resolving a question of present *and* future infringement. In sum, Gibson's claims are ripe for judicial review.

### C. Jurisdiction Under the Declaratory Judgment Act

Defendants argue that even if the Court finds that Gibson's claims are ripe, it should decline to exercise jurisdiction under the Declaratory Judgment Act. Under the Declaratory Judgment Act, "once a court is satisfied that the jurisdictional prerequisites are met, it considers five factors to determine whether exercising jurisdiction over a declaratory judgment action is appropriate." *Larry E. Parrish*, 989 F.3d at 457. These factors are:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state

courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (quoting *Grand Trunk W. Rail Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). "The *Grand Trunk* factors are not exclusive and the Sixth Circuit has 'never assigned weights' to the factors, 'when considered in the abstract[.]'" *Bowman v. Dentsply Sirona, Inc.*, No. 1:22-CV-191, 2022 WL 18540561, at *6 (W.D. Mich. Oct. 19, 2022) (quoting *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)).

Defendants do not argue that the third or fourth factors (procedural fencing and federalism) bear on this case. As to the first and second factors, however, Defendants contend that a declaratory judgment would not settle the dispute or clarify the parties' relations because Defendants' designs for the entertainment destination are not finalized, and any judgment concerning specific infringements will not cover future modifications to the designs which will inevitably require future litigation. (*See* Defs.' Br. in Supp. of Mot. to Dismiss, PageID.985.)

The Court recognizes that issuing a declaratory judgment now may not resolve the entirety of the parties' dispute because, as Defendants emphasize, it is "unclear as to the final form any development may take." (*Id.*) However, issuing a declaratory judgment now would help clarify the parties' legal relations as Defendants continue marketing and eventually developing the entertainment destination.

In analyzing whether a declaratory judgment would serve a useful purpose in clarifying the legal relations at issue, the Sixth Circuit has explained that

> a party who wants, for example, to embark on a marketing campaign, but has been threatened with a suit over trademark infringement, can go to court under the Declaratory Judgment Act and seek a judgment that it is not infringing that trademark, thereby allowing it to proceed without the fear of incurring further loss . . . . The "useful purpose" served the by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing.

16

*AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004).   Similarly, district courts have considered this second factor to weigh in favor of exercising jurisdiction where a declaratory judgment would clarify whether a party's expected future actions constitute trademark infringement.   *See, e.g.*, *Scott v. White*, 539 F. Supp. 3d 831, 844 (M.D. Tenn. 2021) ("Plaintiffs' declaratory judgment action here, for the reasons explained by the *AmSouth* Court, seeks to settle the uncertainty surrounding their use of the 'Lady A' trademark, and serves the 'useful purpose' of clarifying their trademark rights as they seek to continue performing and operating as 'Lady A.'"); *Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, 1053 (E.D. Mich. 1994) ("A resolution of the declaratory action will determine whether Kmart's key clothing infringes Key's trademarks, and it will either leave Kmart free to continue its promotion of Key clothing or will limit how it may proceed.").

Here, a declaratory judgment would clarify the parties' legal relations.   Defendants may decide not to build the entertainment destination as it is currently designed, but a declaratory judgment would still clarify Gibson's trademark rights as Defendants continue marketing and developing the current design or creating a new one.

As to the fifth factor, Defendants argue that Gibson can "wait to seek relief if Defendants develop 225 Parsons Street in the manner it thinks they might." (Defs.' Reply Br. in Supp. of Mot. to Dismiss, PageID.1263.)   Again, this contention rests on the false assumption that Gibson is only concerned about infringement relating to the future physical entertainment destination itself, rather than as to the present use of its trademarks in marketing and development materials.   Since Gibson alleges that Defendants are presently infringing its trademarks, waiting until the ultimate construction of the entertainment destination is not a more effective remedy.   In sum, the *Grand Trunk* factors weigh in favor of exercising jurisdiction.

17

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendants' motion to dismiss for lack of subject matter jurisdiction (ECF No. 26).


Dated: June 13, 2023                         /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE

18